Michael K. Brown (SBN 104252)
mkbrown@reedsmith.com
Lisa M. Baird (SBN 179958)
lbaird@reedsmith.com
Mildred Segura (SBN 210850)
msegura@reedsmith.com
Nabil A. Bisharat (SBN 270305)
nbisharat@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071

Telephone:  213.457.8000
Facsimile:   213.457.8080

Attorneys for Defendants
Medtronic, Inc., Medtronic Sofamor
Danek USA, Inc., Medtronic Vertelink,
Inc., Wyeth LLC (erroneously sued as
Wyeth, Inc.), Wyeth Pharmaceuticals Inc.,
Pfizer Inc., Alex Bolanos, Kevin Bradley,
Debbie Pagach, and Maral Amiri

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD PLUMMER, JOHNNY BALLINGER, TIMERY UEBBING, TERRY MARTINEZ, TABATHIA GATES, SHARON WHITE, SARA MCMILLAN, ROSILAND SPENCER, RONDA HOULE, NINA VINCENT, MICHAEL MCMILLAN, MAUREEN JACQUES, LORI SHOULDERS, LEONARD HUNTER, JIMMY WEEKS, ISABEL BUCKHOLDT, DYLAN WEST, AUDRA GUERRETTAZ, HASKELL CROFT, DAWN TRUAX, SHANNON COMPSTON, DEREK DAVIS, NORVEL DICKENS, GANA BRETT, JIMMY HENDRICK, JEFFERY HINES, BRENDA LANDIS, PATRICK MCCOY, JOHN MANCUSO, MARSHA MORRIS, ANTHONY NORMIL, PIO EMILIA, NANCY SCHREIBER, WILLIE STANBERRY JR., DOUGLAS PRESTIDGE, MARYANNE WAGNER, BYOTHA THOMAS, PATRICIA SHEPARD, ROSEMARY PENTON, NICHOLAS SCHULTZ, MARY TIMMONS, MELODIE WARD, CYNTHIA GIBSON, SHEILA GOODMAN-GILBERT, KRISTAL | Case No.  2:14-cv-00961 GW-FFMx<br><br>**DEFENDANTS MEDTRONIC, INC., MEDTRONIC SOFAMOR DANEK USA, INC., AND MEDTRONIC VERTELINK, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:        April 3, 2014<br>Time:        8:30 a.m.<br>Place:       Courtroom 10<br><br>First Amended<br>Complaint Filed:  December 18, 2013<br><br>Case Removed:    February 7, 2014<br><br>Honorable George H. Wu<br><br>[Filed concurrently with Notice of Motion and Motion; Request for Judicial Notice, and [Proposed] Order] |

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

US_ACTIVE-116380446

REED, PENNY ROMERO, SHIRLEY HANEY, KAREN SAPPINGTON, LINDA THOMPSON, and SCOTT SMITH,

Plaintiffs

vs.

MEDTRONIC, INC. MEDTRONIC SOFAMOR DANEK USA, INC., MEDTRONIC VERTELINK, INC., WYETH INC., WYETH PHARMACEUTICALS, INC., PFIZER, INC., DR. GARY K. MICHELSON, ALEX BOLANOS, KEVIN BRADLEY, DEBBIE PAGACH, MARAL AMIRI, and DOES 1 THROUGH 100, inclusive,

Defendants.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.    Introduction ................................................................................................ 1

II.   Statement of Facts ..................................................................................... 2

    A.   The FDA Granted Premarket Approval for the Infuse Device in 2002 ...................................................................................................... 3

    B.   The FDA Continues to Regulate the Infuse Device ................................. 4

    C.   Off-Label Use of Medical Devices .......................................................... 4

III.  Argument .................................................................................................... 6

    A.   Plaintiffs' Claims Are Expressly Preempted By Section 360k(a) ..................................................................................................... 7

        1.   Premarket Approval Imposes Federal Requirements With Preemptive Effect ....................................................................... 7

        2.   Plaintiffs' Claims Are Based On State Law Requirements Different From Or Additional To The Federal Requirements ................................................................ 8

            a.   Failure-to-warn claim ................................................................ 9

            b.   Design defect claim ................................................................. 10

            c.   Manufacturing Defect claim .................................................... 11

            d.   Breach of Express and Implied Warranties Claim ............. 11

            e.   Negligence And Strict Liability Claims .............................. 12

            f.   Negligence Per Se .................................................................... 12

            g.   Fraud claims ............................................................................. 13

            h.   UCL Claim ............................................................................... 14

    B.   Plaintiffs Cannot Avoid Express or Implied Preemption ....................... 15

        1.   Plaintiffs' Boilerplate Allegations Of Federal Violations Do Not Affect Express Preemption ............................................... 15

        2.   Section 337(a) Impliedly Preempts and Bars Plaintiffs' Claims ................................................................................... 20

    C.   Independent Grounds Also Bar Certain Claims ...................................... 22

        1.   Plaintiffs' Fraud Claims Are Not Pled with Particularity ............. 22

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- i -

# TABLE OF CONTENTS
## (CONTINUED)

**Page**

    2. Plaintiffs' Breach of Express and Implied Warranty Claims Fail ................................................................................ 24

    3. Plaintiffs' Strict Liability Design Defect Claim Is Barred by the Restatement (Second) of Torts, § 402A, Comment k .................................................................................................. 25

IV. Conclusion ................................................................................ 25

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ali v. Allergan USA, Inc.*,
2012 WL 3692396 (E.D. Va. Aug 23, 2012) ............................................................ 15

*Alton v. Medtronic, Inc.*,
2013 WL 4786381 (D. Or. Sept. 6, 2013) ................................................................. 9

*Artiglio v. Superior Court*,
22 Cal. App. 4th 1388 (1994) .................................................................................. 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. 6

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ................................................................................. 23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 6

*Brown v. Superior Court*,
44 Cal. 3d 1049 (1988) ............................................................................................ 25

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ............................................................................................ passim

*Burns v. Medtronic, Inc.*,
2013 WL 5596122 (C.D. Cal. Oct. 8, 2013) ............................................................ 2

*Cabana v. Stryker Biotech, LLC*,
2012 WL 3876245 (Cal. Super. Aug. 20, 2012) ....................................................... 9

*Cafasso v. General Dynamics C4 Systems, Inc.*,
637 F.3d at 1047 (9th Cir. 2011) ....................................................................... 22, 24

*Caplinger v. Medtronic, Inc.*,
921 F. Supp. 2d 1206 (W.D. Okla. 2013) ............................................................ passim

*Carson v. Depuy Spine, Inc.*,
365 Fed. App'x 812 (9th Cir. 2010, unpub.) ............................................................ 12

*Coleman v. Medtronic, Inc.*,
---Cal.Rptr.3d---, 2014 WL 286096 (2014) .............................................................. 9

*Covert v. Stryker Corp.*,
2009 WL 2424559 (M.D.N.C. Aug. 5, 2009) .......................................................... 15

*Cox v. Depuy Motech, Inc.*,
2000 WL 1160486 (S.D. Cal. Mar. 29, 2000) .......................................................... 5

*Dawson v. Medtronic, Inc.*,
2014 WL 37851 (D.S.C. Jan. 6, 2014), *adopting* 2013 WL 4048850 (D.S.C. Aug. 9, 2013) ........................................................................................................................ 1

*Eidson v. Medtronic, Inc.*,
---F. Supp. 2d.---, 2013 WL 5533081 (N.D. Cal. Oct. 3, 2013) ................. 2, 9, 10, 25

*Erickson v. Boston Scientific Corp.*,
846 F. Supp. 2d 1085 (C.D. Cal. 2011) ...................................................... 1, 8, 11, 22

- iii -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Fender v. Medtronic, Inc.*,
   887 F. Supp. 1326 (E.D. Cal. 1995)........................................................................25

*Garrett v. Howmedica Osteonics Corp.*,
   214 Cal. App. 4th 173 (2013)................................................................................25

*Gavin v. Medtronic, Inc.*,
   2013 WL 3791612 (E.D. La. July 19, 2013).....................................................passim

*Harris v. Medtronic, Inc.*,
   2013 WL 4011624 (Cal. Super. Aug. 1, 2013) .........................................................9

*Hawkins v. Medtronic, Inc.*,
   2014 WL 346622 (E.D. Cal. Jan. 30, 2014).......................................................passim

*Houston v. Medtronic, Inc.*,
   ---F. Supp. 2d---, 2013 WL 3927839 (C.D. Cal. July 30, 2013) ........................passim

*Hufft v. Horowitz*,
   4 Cal. App. 4th 8 (1992)........................................................................................25

*In re Actimmune Mktg. Litig.*,
   2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 Fed. App'x 651 (9th Cir.
   2011)....................................................................................................................23

*In re Medtronic Sprint Fidelis Leads Prods. Liab. Litig. (Bryant v. Medtronic, Inc.)*,
   623 F.3d 1200 (8th Cir. 2010).........................................................................passim

*In re Medtronic, Inc.*,
   592 F. Supp. 2d at 1163.........................................................................................13

*In re Zyprexa Prods. Liab. Litig.*,
   2008 WL 398378 (E.D.N.Y. Feb. 12, 2008)...........................................................21

*Kashani-Matts v. Medtronic Inc.*,
   2013 WL 6147032 (C.D. Cal. Nov. 22, 2013)........................................1, 7, 10, 13

*Kemp v. Medtronic, Inc.*,
   231 F.3d 216 (6th Cir. 2000)..................................................................................20

*Ledet v. Medtronic, Inc.*,
   2013 WL 6858858 (S.D. Miss. Dec. 30, 2013) ..................................................passim

*Littlebear v. Advanced Bionics, LLC*,
   896 F. Supp. 2d 1085 (N.D. Okla. 2012)................................................................19

*Loreto v. Procter & Gamble Co.*,
   515 Fed. Appx. 576 (6th Cir. 2013) .......................................................................21

*Lowe v. Medtronic, Inc.*,
   2012 WL 3656468 (C.D. Cal. May 9, 2012) ...........................................................11

*McClelland v. Medtronic, Inc.*,
   --- F. Supp. 2d ----, 2013 WL 2109965 (M.D. Fla. May 16, 2013)........................13

*McClelland v. Medtronic, Inc.*,
   2012 WL 5077401 (M.D. Fla. 2012) ................................................................18, 19

*McGuan v. Endovascular Techs.*,
   182 Cal. App. 4th 974 (2010)................................................................................15

*McMullen v. Medtronic, Inc.*,
   421 F.3d 482 (7th Cir. 2005)..............................................................10, 15, 16, 17

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) ...............................................................................................15, 17

*Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*,
2008 WL 4367554 (S.D. Ind. Sept. 18, 2008) ...........................................................5

*Otis-Wisher v. Fletcher Allen Health Care, Inc.*,
--- F. Supp. 2d ---, 2013 WL 3214714 (D. Vt. June 25, 2013) .........................2, 9, 11

*Perez v. Nidek Co., Ltd.*,
711 F.3d 1109 (9th Cir. 2013) ...........................................................................passim

*Plenger v. Alza Corp.*,
11 Cal. App. 4th 349 (1992) ...................................................................................25

*Purchase v. Advanced Bionics, LLC*,
896 F. Supp. 2d 694 (W.D. Tenn. 2011) ...................................................................19

*Ramirez v. Medtronic, Inc.*,
2013 WL 4446913 (D. Ariz. Aug. 21, 2013) .............................................................9

*Riegel v. Medtronic, Inc.*,
552 U.S. 312 (2008) ...........................................................................................passim

*Riley v. Cordis Corp.*,
625 F. Supp. 2d 769 (D. Minn. 2009) ............................................................6, 20, 21

*Scovil v. Medtronic, Inc.*,
---F. Supp. 2d ---, 2014 WL 502923 (D. Ariz. Feb. 7, 2014) ...........................passim

*Simmons v. Boston Scientific Corp.*,
2013 WL 1207421 (C.D. Cal. Mar. 25, 2013) ....................................................passim

*Stengel v. Medtronic, Inc.*,
704 F.3d 1224 (9th Cir. 2013) ...................................................................................8

*Temple v. Velcro USA, Inc.*,
148 Cal. App. 3d 1090 (1983) ..................................................................................24

*U.S. v. Caronia*,
703 F.3d 149 (2d Cir. 2012) .........................................................................5, 12, 16

*Walker v. Medtronic, Inc.*,
670 F.3d 569(4th Cir. 2012), *cert. denied*, 133 S. Ct. 162 (2012) .............................8

*Wolicki-Gables v. Arrow Int'l, Inc.*,
634 F.3d 1296 (11th Cir. 2011)......................................................................8, 10, 17

**Statutes**

21 U.S.C. § 331(b) ..................................................................................................16

21 U.S.C. § 337(a) ...................................................................................1, 12, 15, 20

21 U.S.C. § 360c(a)(2)(C) ..........................................................................................3

21 U.S.C. § 360e(d) ....................................................................................................3

21 U.S.C. § 360e(d)(6)(A)(i) ......................................................................................4

21 U.S.C. § 360e(d)(6)(B) ........................................................................................18

21 U.S.C. § 360h(e) ....................................................................................................4

21 U.S.C. § 360k(a) .........................................................................................1, 6, 7, 8

21 U.S.C. § 360k(a)(1).................................................................................................8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

21 U.S.C. §§ 360e(e)(1) ...............................................................................................4

Cal. Civ. Code § 1791 ................................................................................................25

Cal. Civ. Code § 1792.2 .............................................................................................25

Cal. Civ. Code § 1793.02 ...........................................................................................25

Cal. Civ. Code § 1793.02(e)(3) ..................................................................................25

Cal. Evid. Code § 669 ................................................................................................12

**Regulations**

21 C.F.R. § 803.16 .....................................................................................................18

21 C.F.R. § 803.50 ...............................................................................................17, 19

21 C.F.R. § 803.9(a) ...................................................................................................17

21 C.F.R. § 814.39 ...............................................................................................17, 18

21 C.F.R. § 814.39(a), (c) ............................................................................................4

**Other Authorities**

Restatement (Second) of Torts § 402A Comment k..................................................2, 25

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- vi -

# I.   INTRODUCTION

This case arises from the use of a Class III prescription medical device—Medtronic's Infuse Device—whose design, manufacture, and labeling were specifically approved by the Food and Drug Administration (FDA) under the agency's Premarket Approval (PMA) process.  Plaintiffs' claims are expressly preempted by the Medical Device Amendments (MDA) to the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 360k(a), and impliedly preempted by *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341 (2001) and the "no private right of action clause" of the FDCA, 21 U.S.C. § 337(a).

As the Supreme Court explained in *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), Congress granted the FDA exclusive authority to set all requirements for PMA-approved devices, and enacted § 360k(a) to expressly preempt any state-law claim that would impose a requirement "different from, or in addition to" those imposed by the FDA.  *Kashani-Matts v. Medtronic Inc.*, 2013 WL 6147032, *3 (C.D. Cal. Nov. 22, 2013); *see also Simmons v. Boston Scientific Corp.*, 2013 WL 1207421, *3 (C.D. Cal. Mar. 25, 2013); *Erickson v. Boston Scientific Corp.* 846 F. Supp. 2d 1085, 1091 (C.D. Cal. 2011).  Congress also directed that all actions to enforce the FDCA "shall be by and in the name of the United States."  21 U.S.C. § 337(a); *see also Kashani-Matts*, 2013 WL 6147032, *3.

Each of Plaintiffs' claims here are expressly and impliedly preempted, and similar to the claims recently dismissed in three other federal Infuse Device cases from California: *Hawkins v. Medtronic, Inc.,* 2014 WL 346622 (E.D. Cal. Jan. 30, 2014); *Kashani-Matts,* 2013 WL 6147032; and *Houston v. Medtronic, Inc.*, ---F. Supp. 2d---, 2013 WL 3927839, *7-*8 (C.D. Cal. July 30, 2013).  In turn, these Infuse Device decisions are largely consistent with those of eight other federal courts:

- *Scovil v. Medtronic, Inc.*, ---F. Supp. 2d ---, 2014 WL 502923 (D. Ariz. Feb. 7, 2014);
- *Dawson v. Medtronic, Inc.,* 2014 WL 37851 (D.S.C. Jan. 6, 2014), *adopting*

- 1 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

2013 WL 4048850 (D.S.C. Aug. 9, 2013);

- *Ledet v. Medtronic, Inc.*, 2013 WL 6858858 (S.D. Miss. Dec. 30, 2013);
- *Burns v. Medtronic, Inc.*, 2013 WL 5596122 (C.D. Cal. Oct. 8, 2013)
- *Eidson v. Medtronic, Inc.,* ---F. Supp. 2d.---, 2013 WL 5533081 (N.D. Cal. Oct. 3, 2013);
- *Gavin v. Medtronic, Inc.*, 2013 WL 3791612 (E.D. La. July 19, 2013);
- *Otis-Wisher v. Fletcher Allen Health Care, Inc.*, --- F. Supp. 2d ---, 2013 WL 3214714 (D. Vt. June 25, 2013); and
- *Caplinger v. Medtronic, Inc.*, 921 F. Supp. 2d 1206 (W.D. Okla. 2013).

Plaintiffs' claims do not fit through the "narrow gap" between expressly preempted and impliedly preempted claims that the application of *Riegel* and *Buckman* together create. *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (quoting *In re Medtronic Sprint Fidelis Leads Prods. Liab. Litig.* (*Bryant v. Medtronic, Inc.*)*,* 623 F.3d 1200, 1204 (8th Cir. 2010) ("*Bryant*")).  And while Plaintiffs' operative complaint is laced with allegations Medtronic promoted the Infuse Device for "off-label" uses—*i.e.*, uses not indicated on the FDA-approved label—preemption still applies. *See Houston*, 2013 WL 3927839, *8; *Caplinger*, 921 F. Supp. 2d at 1218; *Ledet*, 2013 WL 6858858, *4; *Dawson*, 2013 WL 4048850, *6-7.

Finally, independent grounds also require dismissal of many of Plaintiffs' claims: (1) Plaintiffs' misrepresentation and fraud claims must be dismissed because they are not alleged with the requisite particularity required by Rule 9(b); (2) Plaintiffs' breach of express and implied warranty claims fail to plead sufficient facts to satisfy Rule 8, are barred because Medtronic explicitly disclaimed all warranties in its labeling, and implied warranty is prohibited in these circumstances by California Civil Code Section 1793.02; and (3) the "strict liability—design defect" claim is barred by California adoption of the Restatement (Second) of Torts § 402A Comment k.  For all these reasons, Medtronic's Motion to Dismiss should be granted.

## II.    STATEMENT OF FACTS

For purposes of this Motion, the relevant factual allegations are straightforward:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 2 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(1)   The medical device at issue is the Infuse Device.  [*See e.g., First Amended Complaint ("FAC"),* ¶ 1]; and

(2)   The Infuse Device is a Class III medical device approved by the FDA through the rigorous Premarket Approval process.  [*See Doc. 1, ¶¶ 128; 135; see also Medtronic's Request for Judicial Notice ("RJN"), Ex. A, the Infuse Device Premarket Approval Database Listing, p. 1*]

Although these two background facts are all that is required to grant Medtronic's preemption-based Motion to Dismiss under the controlling Supreme Court standards, a more detailed regulatory history follows to provide this Court with additional context for the preemption issue at hand.

## A.   The FDA Granted Premarket Approval for the Infuse Device in 2002

As initially approved by the FDA, the "Infuse Device" consists of three parts: (1) a recombinant human bone morphogenetic protein-2 ("rhBMP-2"); (2) a collagen "scaffold" (that is, a sponge), and (3) a tapered metallic spinal fusion cage.[1] [*See RJN, Ex. B*]  The Infuse Device is a Class III medical device subject to the rigorous Premarket Approval process, which applies to innovative devices like the Infuse Device that, by definition, present a potential for unreasonable risk of illness or injury, and are important to supporting or sustaining human life, or preserving human health. *See Riegel*, 552 U.S. at 317; *Buckman*, 531 U.S. at 344.  For these reasons, the FDA "grants premarket approval only if it finds there is a 'reasonable assurance' of the device's 'safety and effectiveness'" after "'weig[hing] any probable benefit to health from the use of the device against any probable risk of injury or illness from such use.'" *Riegel*, 552 U.S. at 318 (quoting 21 U.S.C. §§ 360c(a)(2)(C), 360e(d)).  "[I]t *is*

---

[1]   While the FDA's initial Premarket Approval for the "Infuse Bone Graft/LT-Cage Lumbar Tapered Fusion Device" specified the LT-Cage, later-approved PMA Supplements authorized alternative cage components, "InterFix" and "InterFix RP." [*See RJN, Ex. D*]  In this configuration, the Infuse Device is labeled for use in the treatment of degenerative disc disease in a surgical procedure known as spinal fusion. [*See RJN, Ex. B, p. 1*] The FDA has also approved PMA Supplements for the Infuse Device in other configurations without a cage component.  [*See RJN, Exs. E & F*]

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

federal safety review." *Id.* at 323 (emphasis in original).

On July 2, 2002, after a nearly year-and-a-half review, the FDA granted Premarket Approval for the Infuse Device under PMA Number P000058. [*RJN, Ex. A, p. 1, Ex. B, p. 1*]

**B.     The FDA Continues to Regulate the Infuse Device**

After the FDA grants Premarket Approval to a device, its regulatory oversight does not end.  "Once a device has received Premarket Approval, [federal law] forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness." *Riegel*, 552 U.S. at 319 (citing 21 U.S.C. § 360e(d)(6)(A)(i)).  To make such changes, a manufacturer must submit a PMA Supplement subject to the same rigorous standards of review as the initial application, and can implement the proposed changes only after FDA approval.  *See id.* (citing 21 C.F.R. § 814.39(a), (c)).  Since the Infuse Device first received Premarket Approval, the FDA has approved forty-seven supplements to its Premarket Approval, the most recent on December 6, 2013.  [*RJN, Ex. A, p. 2; Ex. C, FDA's Premarket Approval Database Listing for PMA Supplement 054 for Infuse*]

The FDA has the power to withdraw premarket approval based on newly reported data or existing information and *must* withdraw approval if it determines that a device is unsafe or ineffective under the conditions in its labeling.  *See id.*, at 319-320 (citing 21 U.S.C. §§ 360e(e)(1) and 360h(e)) (emphasis added).  The FDA has never revoked, withdrawn, or suspended the Premarket Approval for the Infuse Device.  [*RJN, Ex. A*]

**C.     Off-Label Use of Medical Devices**

The Plaintiffs all allege that their physicians used the Infuse Device in an "off-label" manner—*i.e.*, different from the "Indications for Use" on the device's FDA-approved labeling, namely in transforaminal lumbar interbody fusion, posterolateral fusion, and cervical fusions.  *FAC, ¶¶ 1-65.*  Plaintiffs allege they experienced a range

- 4 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of different injuries as a result, such as unwanted bone growth. *Id.*

Off-label use is not expressly prohibited by the FDCA and can be the standard of appropriate medical care. The Supreme Court explained that "'off-label' usage of medical devices…is an accepted and necessary corollary of the FDA's mission to regulate in this area without directly interfering with the practice of medicine." *Buckman*, 531 U.S. at 350; *see also Cox v. Depuy Motech, Inc.,* 2000 WL 1160486, *8 (S.D. Cal. Mar. 29, 2000) ("A physician may use any device legally on the market in any way the physician deems appropriate which may be consistent with the seller's labeling or 'off-label,'…A seller is not liable even if it knows of off-label uses"). As the *Caplinger* court observed in dismissing similar Infuse Device claims, "off-label use is not illegal or even disfavored…but is an accepted and valuable part of the practice of medicine." 921 F. Supp. 2d at 1218 n.3.[2]

Indeed, the FDA's "approval process generally contemplates that approved [devices] will be used in off-label ways." *U.S. v. Caronia*, 703 F.3d 149, 166 (2d Cir. 2012). The FDA's approval process for the Infuse Device did as well. Among other label language about off-label procedures, the FDA required the Infuse Device label to

---

[2]  Plaintiffs refers to some uses of the Infuse Device as "non-approved" uses, but the FDA has said that the similar "term 'unapproved uses' is … misleading," because the agency does not regulate the use of medical products. FDA, Use of Approved Drugs for Unlabeled Indications, 12 FDA Drug Bull. 4, 5 (1982). Through the PMA process, the FDA does not regulate particular ***uses*** of medical devices; it instead approves (or disapproves) only ***devices*** and ***their labeling***. *See, e.g., Perez,* 711 F.3d at 1115; *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 2008 WL 4367554, at *6 (S.D. Ind. Sept. 18, 2008) ("[T]he FDA does not approve or disapprove the use of medical devices for specific treatments.").; *see also Hawkins*, 2014 WL 346622, at *6 ("[T]he application of Section 360k(a) is 'with respect to a *device,*' not the manner in which the device was actually used") (emphasis original). Doctors are free to use a device in any manner they deem appropriate, and off-label use also has no impact on preemption. *Id.* In *Riegel* itself, the device at issue was used in an off-label manner. *Riegel*, 552 U.S. at 320. Despite that off-label usage, the Supreme Court concluded that the plaintiffs' claims were preempted. *Id.* at 321-30; *see also Gavin*, 2013 WL 3791612, at *12 (recognizing *Riegel* involved an off-label use).

- 5 -

carry warning about potential risks associated with off-label procedures.  [*See RJN, Ex. I, p. 1* (warning of potential for unwanted bone growth from posterior procedures).

## III.   ARGUMENT

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where the complaint fails to state a claim for relief "that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Perez,* 711 F.3d at 1113.

The MDA's express preemption provision is cast in very broad terms:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement –
> (1) which is *different from, or in addition to, any requirement* applicable under this chapter to the device, and
> (2) which *relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device* under this chapter.

21 U.S.C. § 360k(a) (emphasis added).

Congress has—through § 360k(a) as interpreted in *Riegel*—expressly preempted state-law claims challenging the design, manufacture, or labeling of a Premarket Approved medical device.  It also  has—through § 337(a) as interpreted in *Buckman*—impliedly preempted state-law tort claims that seek to enforce the federal medical device regulations.  Together, "'*Riegel* and *Buckman* create a narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied preemption.'"  *Perez,* 711 F.3d at 1120 (quoting *Bryant*, 623 F.3d at 1204 (in turn quoting *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009))).  To avoid dismissal, "'[t]he plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA ([because] such a claim would be impliedly preempted under *Buckman*).'"  *Caplinger*, 921 F. Supp. 2d at 1215 (quoting *Bryant*, 623 F.3d at 1204); *see also Gavin*, 2013 WL 3791612, *5.  Plaintiffs' claims do not fit

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 6 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

through that narrow gap; each claim is expressly and impliedly preempted, and must be dismissed. *See Caplinger*, 921 F. Supp. 2d at 1219-24; *Hawkins,* 2014 WL 346622, at \*8-20; *Ledet*, 2013 WL 6858858, at \*4-6; *Kashani-Matts*, 2013 WL 6147032, at \*3-6.

## A. Plaintiffs' Claims Are Expressly Preempted By Section 360k(a)

In enacting 21 U.S.C. § 360k(a), Congress "swept back some state obligations and imposed a regime of detailed federal oversight," enforced by an expert federal agency, rather than private plaintiffs and lay juries. *Riegel*, 552 U.S. at 316; *see also Houston*, 2013 WL 3927839, \*4. Although § 360k(a)'s broad preemption of state tort claims may leave some individuals who are injured by FDA-approved medical devices "'without … judicial recourse,'" that was in Congress's estimation, outweighed by the benefit to the far greater number "who would suffer without new medical devices if juries were allowed to apply the tort law of 50 States to all innovations." *Riegel*, 552 U.S. at 326. As an alternative to private tort actions, Congress gave the FDA substantial authority to police and sanction device manufacturers under federal law. *See Buckman*, 531 U.S. at 349.

The Supreme Court in *Riegel* established a straightforward two-step procedure for determining if state law claims are expressly preempted under § 360k(a). A court must first determine whether "the Federal Government has established requirements applicable to" the device. *Riegel*, 552 U.S. at 321. If it has, the court must then determine whether the claims would impose "requirements with respect to the device that are 'different from, or in addition to'" the federal requirements. *Id*. at 322. When, as here, both conditions are satisfied, the claims are expressly preempted.

### 1. Premarket Approval Imposes Federal Requirements With Preemptive Effect

*Riegel* establishes that Premarket Approval of a medical device imposes federal requirements that preempt state tort claims. Because "the FDA requires a device that has received Premarket Approval to be made with almost no deviations from the

- 7 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

specifications in its approval application," "[p]remarket approval … imposes [federal] 'requirements'" as that term is used in § 360k(a). 552 U.S. at 322. Claims involving a device that has received Premarket Approval, such as the Infuse Device, satisfy *Riegel*'s first condition automatically. *See id.* at 322–23; *see also Walker v. Medtronic, Inc.,* 670 F.3d 569, 573-74 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 162 (2012); *Wolicki-Gables v. Arrow Int'l, Inc.,* 634 F.3d 1296, 1300-01 (11th Cir. 2011). *Riegel* then further held that state common-law claims impose "requirements … 'with respect to devices'" as that term is used in § 360k(a). *Riegel*, 552 U.S. at 327. Thus, *Riegel* stands unequivocally for the proposition that § 360k(a) expressly preempts any state-law cause of action that would impose requirements respecting the safety or effectiveness of a PMA-device that are "'different from, or in addition to'" the requirements imposed by federal law. 552 U.S. at 321 (quoting 21 U.S.C. § 360k(a)); *see also, e.g.*, *Stengel v. Medtronic, Inc*., 704 F.3d 1224, 1233 (9th Cir. 2013) (en banc) (cert. pet. pending); *Wolicki-Gables,* 634 F.3d at 1300-01; *Simmons*, 2013 WL 1207421, *3; *Erickson,* 846 F. Supp. 2d at 1091.

### 2. Plaintiffs' Claims Are Based On State Law Requirements Different From Or Additional To The Federal Requirements

When state law imposes requirements that are different from, or in addition to, the federal requirements imposed on a device by the FDA, express preemption results. Simply put, off-label promotion is expressly preempted. *Perez*, 711 F.3d at 1118. In *Perez*, the plaintiffs alleged a fraud by omission claim and that the defendant had promoted the device at issue for off-label uses, and pointed to an FDA "warning letter" faulting the defendant's employees for modifying the device (in violation of PMA) so that it could be used off-label. *Id.* at 1113. The Ninth Circuit affirmed dismissal of the fraud by omission claim on the grounds of express preemption because the claim would add a disclosure requirement "'different from, or in addition to' the requirements applicable to the [device] under the MDA." *Id.* at 1118 (quoting 21 U.S.C. § 360k(a)(1)). As held in Infuse Device cases, such claims are "the exact

- 8 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

type of claim that is expressly preempted under § 360k(a)," because they would "establish [state-law] requirements different from, or in addition to, federal requirements for the Infuse device." *Caplinger*, 921 F. Supp. 2d at 1221-23; *accord Hawkins,* 2014 WL 346622, at *10-13; *Eidson*, 2013 WL 5533081, *9; *Dawson,* 2013 WL 4048850, *6; *Houston*, 2013 WL 3927839, *8; *Gavin*, 2013 WL 3791612, *12; *Otis-Wisher*, 2013 WL 3214714, *4-*5; *Harris v. Medtronic, Inc.,* 2013 WL 4011624 (Cal. Super. Aug. 1, 2013).[3]

Here, each of Plaintiffs' claims fail for similar reasons.

### a.   Failure-to-warn claim

Plaintiffs' failure to warn claims—whether the Second Cause of Action ("strict products liability—failure-to-warn") or as theories underlying Plaintiff's separate "negligence" and "strict liability" causes of action—do ***not*** allege that Medtronic failed to provide the warnings that the FDA required through the PMA process. Instead, Plaintiffs allege that Medtronic should have, as a matter of state law, given some (unstated) additional or different warnings, beyond those specified by the FDA.[4]

[3]   *But see Coleman v. Medtronic, Inc.*, ---Cal.Rptr.3d---, 2014 WL 286096 (2014) (affirming dismissal of claims for fraud, intentional misrepresentation, unfair competition, and concealment, and finding claims that defendant should have given warnings different from what the FDA required preempted, but allowing manufacturing defect and certain negligence and failure to warn theories to proceed past the pleading stage); *Brandt v. Medtronic, Inc.,* No. 12-2-07422-4 SEA (Wash. Super. Ct. Sept. 18, 2013); *Alton v. Medtronic, Inc.*, 2013 WL 4786381 (D. Or. Sept. 6, 2013); *Ramirez v. Medtronic, Inc.*, 2013 WL 4446913 (D. Ariz. Aug. 21, 2013), mot. for reconsideration denied on Oct. 28, 2013; *Sanda v. Medtronic, Inc.*, No. 2013L000305 (Ill. Cir. Ct. Jul. 18, 2013); *Martinez v. Jeffrey Oppenheimer, M.D.*, No. 12-31442 CA 06 (Fla. 11th Cir. Ct. Mar. 5, 2013); *Huggins v. Medtronic, Inc.*, No. 12CV40 (Colo. Dist. Ct. Feb. 21, 2013); *Cabana v. Stryker Biotech, LLC,* 2012 WL 3876245 (Cal. Super. Aug. 20, 2012).

[4]   Federal law specifically ***forbids*** manufacturers from issuing warnings beyond those prescribed by the FDA.  Once a device receives premarket approval, "the MDA forbids the manufacturer to make, without FDA permission, changes in…labeling, or any other attribute, that would affect safety or effectiveness."  *Riegel*, 552 U.S. at 319.

- 9 -

But any such claim runs headlong into § 360k(a) because state law would require a warning different from what federal law requires and is preempted as a result. *Riegel*, 552 U.S. at 329; *id*. at 320 (affirming dismissal of claims of strict liability and negligence in device labeling); *see also Scovil*, 2014 WL 502923, at 10 (citing *Perez* and finding claim preempted); *Hawkins*, 2014 WL 346622, at *13-16; *Ledet*, 2013 WL 6858858, at *4; *Kashani-Matts*, 2013 WL 6147032, at *4; *Eidson,* 2013 WL 5533081, *12; *Houston,* 2013 WL 3927839, *8; *Caplinger*, 921 F. Supp. 2d 1219-1221, 1223-24; *accord, e.g.*, *Wolicki-Gables*, 634 F.3d at 1301–02; *Bryant*, 623 F.3d at 1205; *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 489–90 (7th Cir. 2005).[5]

### b.    Design defect claim

Plaintiffs' design defect claims—both the Third Cause of Action and as theories underlying their negligence and strict liability causes of action—also are preempted. Although Plaintiffs allege the Infuse Device had a defective design, they do ***not*** allege that the design was anything other than the design approved by the FDA in the PMA process.  Thus, to prevail, Plaintiffs necessarily would have to prove that the Infuse Device should have employed a design ***different*** from that approved by the FDA. *Riegel* squarely forecloses any such claim.  *See* 552 U.S. at 320 (MDA preempts "claims of strict liability … and negligence in the design" of device); *see also Caplinger*, 921 F. Supp. 2d at 1223 (design defect "is the exact type of claim that is expressly preempted under § 360k(a)"); *Scovil*, 2014 WL 502923, at *9 (design defect claim preempted because the FDA contemplates off-label uses in its approval, and

---

[5]  Medtronic anticipates Plaintiffs may rely on *Stengel* to argue that their failure to warn claim survives based on alleged failure to report adverse events.  In *Stengel*, the Ninth Circuit held that the plaintiffs' proposed negligence claim for failure to warn the FDA was not preempted insofar as the state-law duty parallels a federal-law duty to report adverse events. But *Stengel* is inapposite: it was based on allegations of failure-to-report under Arizona's negligence law, which is not at issue here. Nevertheless, as cases like *Perez*, *Simmons*, *Houston*, and *Kashani-Matts* demonstrate, Ninth Circuit courts still find preemption applies even post-*Stengel*.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

therefore, off-label use cannot be a basis for design defect); *Kashani-Matts*, 2013 WL 6147042, at \*4 (design defect claim preempted because it "is an 'attack' on the FDA review process rather than a parallel state claim."); *Ledet*, 2013 WL 6858858, at \*4 (dismissing strict liability design defect claim); *Houston,* 2013 WL 3927839, \*8 (same); *Simmons,* 2013 WL 1207421, \*5 (same); *Erickson*, 846 F. Supp. 2d at 1088, 1093 (same).

### c.    Manufacturing Defect claim

Plaintiffs' manufacturing defect claims—whether the First Cause of Action or as theories underlying their negligence and strict liability causes of action—also are preempted because they fault the FDA-approved manufacturing process for the Infuse Device, and thus would require Medtronic to have used a different process. *See e.g.*, *Scovil*, 2014 WL 502923, at \*9 (the FDA approves the manufacturing of Infuse Device with knowledge it can be used in off-label manner and finding claim expressly preempted); *Otis-Wisher*, 2013 WL 3214714, \*5 (Infuse Device case; holding manufacturing defect claim was expressly preempted); *Erickson*, 846 F. Supp. 2d at 1093-94 (dismissing manufacturing defect claim with prejudice based on express preemption); *Lowe v. Medtronic, Inc.*, 2012 WL 3656468 (C.D. Cal. May 9, 2012) (same).

### d.    Breach of Express and Implied Warranties Claim

Plaintiffs' Eighth Cause of Action alleges that Medtronic breached express and implied warranties involving the safety and efficacy of the Infuse Device [*FAC, ¶¶ 371-374*][6]  These claims would require a jury to find that the Infuse Device "was

---

6  In addition to being preempted, Plaintiffs' breach of express and implied warranties claim fails because the FDA-mandated labeling for the Infuse Device ***expressly disclaimed*** the existence of any warranties, express or implied. *See Scovil*, 2014 WL 502923, at \*11*; see also RJN, Exhibit G, Important Medical Information for the Infuse Device, p. 3; see also RJN, Exhibit H, Summary of Safety and Effectiveness Data for the Infuse Device, p. 6.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

not safe and effective." *Gavin*, 2013 WL 3791612, at \*15–16; *Caplinger*, 921 F. Supp. 2d at 1222; *Ledet*, 2013 WL 6858858, at \*5.  But that would conflict with the FDA's conclusive determination in granting PMA that "there is a 'reasonable assurance' of the device's 'safety and effectiveness.'" *Riegel*, 552 U.S. at 318; *see, e.g., Dawson*, 2013 WL 4048850, at \*6 (warranty claims involving Infuse Device preempted); *Ledet*, 2013 WL 6858858, at \*5 (same); *Gavin*, 2013 WL 3791612, at \*15 (same); *Caplinger*, 2013 WL 453133, at \*14 (same).  That the purported warranties allegedly encompassed off-label uses is immaterial: the FDA approval process "contemplates that approved [devices] will be used in off-label ways."  *Caronia*, 703 F.3d at 166. Thus, this claim is expressly preempted by § 360k(a).

### e.  Negligence And Strict Liability Claims

Plaintiffs' negligence and strict liability claims (Fourth and Tenth Causes of Action) merely repeat the warning, design, and manufacturing defect theories elsewhere in the FAC, and are preempted because they each would require a finding that, as a matter of state negligence law, the FDA-approved manufacturing, design, and label of the Infuse Device was defective.  *See Scovil*, 2014 WL 502923, at \*12 (dismissing preempted claims despite attempt "to restate those claims under [] different title[s]").

### f.  Negligence Per Se

Negligence per se is not an independent cause of action, but rather a way to prove up some elements of ordinary negligence that results in preemption.  *See* Cal. Evid. Code 669; *Carson v. Depuy Spine, Inc.*, 365 Fed. App'x 812, 815 (9th Cir. 2010, unpub.) (upholding preemption and rejecting Plaintiff's negligence per se theory predicated on violation of federal law and noting that "[i]n California, negligence per se is not a separate cause of action but is the application of an evidentiary presumption provided by Cal. Evid. Code § 669.").  Because Plaintiffs base their negligence per se theory (Ninth Cause of Action) on alleged violations of federal regulations, it is an effort to privately enforce federal law contrary to 21 U.S.C. § 337(a)  and impliedly

- 12 -

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

preempted as a result. *See Dawson*, 2013 WL 4048850, \*7 (holding negligence per se claim preempted); *In re Medtronic, Inc.*, 592 F. Supp. 2d at 1163 (finding negligence per se claim was impliedly preempted); *see also McClelland v. Medtronic, Inc.*, --- F. Supp. 2d ----, 2013 WL 2109965, \*6 (M.D. Fla. May 16, 2013) (same).

Moreover, in *Houston*, the Court stated that Plaintiff cannot state a valid parallel claim based on boilerplate allegations of violations of federal law [*Houston*, 2013 WL 3927839, \*9], but that all that Plaintiffs have done here, and the claims is preempted for this reason as well.

### g. Fraud claims

The concealment allegations of Plaintiffs' fraud claim (Fifth Cause of Action) and intentional misrepresentation claim (Sixth Cause of Action) are premised on allegations that Medtronic should have said something additional or different to Plaintiffs' physicians about the safety and risks of the Infuse Device than what the FDA required. (*See, e.g., FAC,* ¶¶ 341; 359-360) But in *Perez*, the Ninth Circuit held that a fraud claim premised on concealment (related to off-label use and promotion) was expressly preempted because "the disclosure requirement" plaintiff advocated was "'different from, or in addition to' the requirements applicable to the [device] under the MDA" and therefore plaintiff was "effectively seek[ing] to write in a new provision to the FDCA." *Perez*, 711 F.3d at 1118.

Moreover, Plaintiffs' attempt to state a fraud claim based on affirmative misrepresentations outside the label (as alleged in their "intentional misrepresentation" claim) fails because they have not alleged sufficient facts of any such misrepresentations. *See Hawkins*, 2014 WL 346622, at \*17 (finding that plaintiff's fraud claim failed because her theory was not pled with particularity); *Houston*, 2013 WL 3927839, \*10 (same); *Kashani-Matts*, 2013 WL 6147032, at \*5 (same); *see also* Section III.C.1, *infra*. Plaintiffs' fraud claims, as pled, attack statements made in the FDA-mandated label and are expressly preempted.

*Caplinger* perfectly demonstrates the above. There, the plaintiff alleged that the

- 13 -

defendants "fraudulently and intentionally misrepresented material and important health and safety product risk information from Plaintiff and her physicians," which are similar to Plaintiffs' allegations here. *Caplinger*, 921 F. Supp. 2d at 1219 (citing allegations of plaintiff's amended complaint, ¶¶ 93-94). The court found this claim preempted because to the extent the claim was based on alleged misrepresentations and omissions contained in the actual warnings and labels accompanying the Infuse Device, it was expressly preempted, as such a claim would "permit a finding that defendants were required to alter" the labeling and warnings that "were specifically approved by the FDA as part of the PMA process," thereby establishing "labeling and warning requirements different from, or in addition to, federal requirements for the Infuse Device." *Caplinger,* 921 F. Supp. 2d at 1219.[7]

Lastly, even though the FDA-required label warned of bone overgrowth, among other warnings, Plaintiffs' claims hinge on allegations that different or additional warnings should have been given. In other words, as alleged, Plaintiffs' fraud claims are "in essence" the same as their failure to warn claims. And because 21 U.S.C. § 360k(a) does not allow plaintiffs to use state law to impose additional or different warning requirements, preemption is the result.

### h. UCL Claim

Plaintiffs' Unfair Competition Law claim is premised on the assertion that the

---

[7] Plaintiffs' Complaint also includes references to an October 2012 report by staff of the Senate Committee on Finance. *See, e.g., FAC, ¶¶ 306-309.* This report did nothing more than offer the staff's opinions about those documents, and takes the referenced materials out of context. The Committee never interviewed Medtronic witnesses about the materials nor offered Medtronic any meaningful opportunity to respond to the report. The staff report references in the Complaint should be disregarded (*see Caplinger*, 921 F. Supp. 2d at 1229 (declining plaintiff's request to amend complaint based on the report because it "has possible reliability issues… [that would not] cure the deficiencies in plaintiff's claims")) and have no bearing on this case. *See infra, Sections III.B.2 and III.C.1.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

device should not have been on the market at all, or that it should have been labeled differently. Such claims are preempted. *See  e.g*., *Bryant*, 623 F.3d at 1205 (dismissing claims of failure to warn); *McGuan v. Endovascular Techs.*, 182 Cal. App. 4th 974, 983 (2010) (finding all claims preempted including violations of the Consumer Legal Remedies Act); *Scovil*, 2014 WL 502923, at *11 (dismissing claims under Arizona's Unfair Competition statute on preemption grounds);  *Ali v. Allergan USA, Inc.,* 2012 WL 3692396, *21 (E.D. Va. Aug 23, 2012) (dismissing claims based on violations of Virginia's Consumer Protection Act and false advertising statute); *Covert v. Stryker Corp.,* 2009 WL 2424559, *1, *16 (M.D.N.C. Aug. 5, 2009) (dismissing claims based on violations of North Carolina's Unfair and Deceptive Trade Practices Act).

## B.    Plaintiffs Cannot Avoid Express or Implied Preemption

In an apparent effort to avoid preemption, the Complaint alleges that Medtronic violated various federal regulations. Yet these allegations do not overcome *express* preemption because Plaintiffs' claims still would require as a matter of *state* law that Medtronic have given warnings (or used a design, or a manufacturing process) different from, or in addition to, those required under *federal* law. And to the extent Plaintiffs seek to enforce purported federal regulations, their claims also are *impliedly* preempted under *Buckman* and barred by 21 U.S.C. § 337(a), the FDCA's "no private right of action" provision.

### 1.    Plaintiffs' Boilerplate Allegations Of Federal Violations Do Not Affect Express Preemption

There is a narrow exception to express preemption for claims that "'parallel,' rather than add to, federal requirements." *Riegel*, 552 U.S. at 330; *see also Hawkins*, 2014 WL 346622, at *4. To be "parallel," a claim must rest on a state-law requirement "identical" to a federal requirement. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996); *see also McMullen*, 421 F.3d at 489 (state-law requirement must be "'*genuinely* equivalent'" to federal requirement).

- 15 -

Plaintiffs allege Medtronic violated federal law by engaging in off-label promotion and failing to report adverse events to the FDA, but these claims do not rest on state law duties that parallel federal requirements.  To state a "parallel" claim, a plaintiff must allege (1) the violation of a specific federal requirement applicable to the device; (2) the violation of an *identical*, but independent, state-law duty; and (3) that the predicate federal violation caused his or her injuries.  *See, e.g.*, *McMullen*, 421 F.3d at 488–89; *Caplinger*, 921 F. Supp. 2d at 1214; *Erickson*, 846 F. Supp. 2d 1092-93; *see also Hawkins,* 2014 WL 346622, *4-5, 9 ("Plaintiff cannot simply incant the magic words 'Defendant violated FDA regulations' in order to avoid preemption") (internal quotations omitted); *Simmons*, 2013 WL 1207421, at *3-4.  Plaintiffs' claims fail to satisfy this demanding standard.

*First,* Plaintiffs' off-label promotion theory fails because Plaintiffs do not—and cannot—identify an express federal prohibition on off-label promotion.  According to Plaintiffs, "device manufacturers can be held liable for off-label promotion when their products are deemed 'misbranded' under the statute."  [*FAC, ¶¶ 205, 208* (citing 21 U.S.C. § 331(b))]  But, as the Second Circuit recently held (in rejecting the government's position otherwise), "the [FDCA] and its accompanying regulations *do not expressly prohibit … off-label promotion*."  *Caronia*, 703 F.3d at 160 (emphasis added); *see also id.* at 154, 168-169; *Dawson*, 2013 WL 4048850, *6 ("for any of these claims to survive . . .the court must accept Plaintiff's premise that off-label promotion is illegal under the FDCA, and this court cannot do so.").  Because federal law does not expressly prohibit off-label promotion, Medtronic's alleged off-label promotion cannot give rise to a "parallel" state-law claim.

*Second*, even if federal law prohibited off-label promotion, the Complaint still fails to state a parallel claim because there is no state-law duty to abstain from off-label promotion because "even the concept of 'off-label use' is a creature of the FDCA, is defined by the FDCA, and is not a part of [state] substantive law."  *Caplinger*, 921 F. Supp. 2d at 1219-20; *Gavin*, 2013 WL 3791612, at *17; *Houston*,

- 16 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

2013 WL 3927839, *8; *Dawson*, 2013 WL 4048850, *6. Unable to identify a state-law prohibition on off-label promotion, Plaintiffs instead rely upon a state-law duty to provide warnings. Yet allegations that a manufacturer violated federal law by promoting off-label uses and allegations that a manufacturer violated state law by failing to issue certain warnings are not "parallel," because a manufacturer could fulfill the purported federal requirement without satisfying the state-law requirement (and vice versa). *See Caplinger*, 921 F. Supp. 2d at 1218 n.4.[8] As two federal courts of appeals have likewise held, "[s]tate and federal requirements are not genuinely equivalent"—and thus are not parallel—if, as here, "a manufacturer could be held liable under the state law without having violated the federal law." *McMullen*, 421 F.3d at 488–89; *Wolicki-Gables*, 634 F.3d at 1300.

***Third***, claims based on the federal duty to report adverse events or PMA supplements to ***the FDA*** is not "identical" (*Medtronic v. Lohr*, 518 U.S. 470, 495 (1996)), and thus not parallel, to a state-law duty to warn ***patients or their physicians***. For instance, 21 C.F.R. § 803.50 requires device manufacturers to report certain adverse events ***to the FDA***, not doctors or patients. Likewise, 21 C.F.R. § 814.39 requires device manufacturers to "submit a PMA supplement for review and approval ***by FDA*** before making a change affecting the safety or effectiveness of the device" (emphasis added); it does not require that manufacturers to disseminate PMA supplements to doctors and patients. Unlike the FDA-approved warnings found on a device label, adverse-event reports are not necessarily made public. *See* 21 C.F.R. § 803.9(a) (FDA "may disclose" adverse-event reports) (emphasis added). Likewise,

---

[8] *Caplinger* predates *Caronia*, and assumed—but did not hold—that such a requirement exists. But the *Dawson* court noted in a post-*Caplinger* opinion that it could not accept "Plaintiff's premise that off-label promotion is illegal under the FDCA." *Dawson*, 2013 WL 4048850, *6. In any event, *Caplinger* correctly concluded that the plaintiff's claims would be preempted ***even if*** off-label promotion were prohibited by federal law, as did Judge Wilson in holding that several such claims were preempted as well in *Houston*, 2013 WL 3927839, *8-*10.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

adverse-event reports and PMA supplements do not necessarily result in new warnings on a device's label.  Labeling changes require FDA approval, and the FDA may not approve a safety-related labeling change absent sufficient scientific data to do so.  *See* 21 U.S.C. § 360e(d)(6)(B); 21 C.F.R. § 814.39.  Most importantly, because adverse-event reports are inherently anecdotal, and because they do not "constitute[] an admission that the device…caused or contributed" to an injury (21 C.F.R. § 803.16), they are not by themselves sufficient grounds for a new warning.

Thus, as a matter of law, a failure to comply with FDA reporting regulations is just that—a failure to comply with FDA regulations.  Manufacturers can do no more than operate within the regulatory framework, which prevents them from modifying their warnings to doctors and patients without the FDA's approval.  As a result, an alleged violation of the federal duty to report adverse events to the FDA is not identical to a state-law claim based on an alleged failure to use reasonable care to warn doctors and patients.  *See, e.g.*, *McClelland v. Medtronic, Inc.*, 2012 WL 5077401, *6 (M.D. Fla. 2012) (a "state-law duty to warn the [patient] or her physician" is not parallel to "manufacturer reporting requirements to the FDA"); *Simmons v. Boston Scientific Corp.*, 2013 WL 1207421, *5 (C.D. Cal. Mar. 25, 2013) (post- *Stengel* decision dismissing failure-to-warn claim where plaintiff "merely baldly assert[ed] that Defendants failed to report adverse events," as "[s]uch unsupported allegations, without more, are insufficient to state a claim").  Even if Medtronic had submitted every (unidentified) adverse-event report that it supposedly failed to submit, that would not necessarily have resulted in the issuance of any new warnings to doctors and patients.

Similarly, any claim premised on an allegation that Medtronic violated federal requirements by not submitting PMA supplements or reporting adverse events to the FDA would be impliedly preempted as an impermissible attempt to enforce exclusively federal requirements with no counterpart in state law.  *See, e.g.*, *Bryant v. Medtronic, Inc.*, 623 F.3d 1200, 1205 (8th Cir. 2010) (claim that manufacturer was

- 18 -

negligent for "not timely fil[ing] adverse event reports, as required by federal regulations" was "simply an attempt by private parties to enforce the MDA"); *McClelland*, 2012 WL 5077401, at *7 ("claims based upon FDCA disclosure requirements … are impliedly preempted"); *Purchase v. Advanced Bionics, LLC*, 896 F. Supp. 2d 694, 695-96 (W.D. Tenn. 2011) (claims based on manufacturer's purported failure to submit PMA Supplement application and required reports were impliedly preempted); *Littlebear v. Advanced Bionics, LLC*, 896 F. Supp. 2d 1085, 1092 (N.D. Okla. 2012) ("All claims predicated on the failure to obtain supplemental PMA approval . . . are impliedly pre-empted").

This was the finding in *Dawson*, 2013 WL 4048850, one of the Infuse Device rulings decided after this Court's Order.  There, the plaintiff indicated in briefing in opposition to Medtronic's Motion to Dismiss that Medtronic had violated several FDA regulations, including 21 C.F.R. §§ 803.50 as alleged here.  *Id*. at *7.  The court found that "all of these regulations relate to information that manufacturers are required to provide to the FDA, and Plaintiff cannot usurp the FDA's regulatory oversight role for policing purported violations of the agency's regulations.  As such, this court finds that any claims based on Defendants' violations of these regulations would clearly be impliedly preempted."  *Id*.

*Finally,* the Complaint also does not adequately allege the requisite causal link between any alleged federal violation and Plaintiffs' alleged injuries.  *See Houston*, 2013 WL 3927839, *5.  While Plaintiffs contend their alleged injuries result from their surgeon's decision to use the Infuse Device off-label, they cannot claim that their alleged injuries resulted from any failure to warn because Plaintiffs and their surgeons *were* warned of these very risks.  The Infuse Device's FDA-approved label explicitly warning that "[t]he safety and effectiveness of the InFUSE Bone Graft component … implanted at locations other than the lower lumbar spine…have not been established." [*RJN, Ex. G, at p. 4; see also id. at 9-10* (warning about "nerve damage," "[n]eurological system compromise," and "back and leg pain" associated with use of

- 19 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

the device)]  Given this publicly available information, Plaintiffs cannot plausibly claim justifiable reliance on alleged misrepresentations about the risks of off-label use or of uncontrolled bone growth.

### 2.    Section 337(a) Impliedly Preempts and Bars Plaintiffs' Claims

Even if off-label promotion or failure to report adverse events allegations could save Plaintiffs' claims from express preemption, their claims would still be "impliedly preempted under *Buckman* and [21 U.S.C.] § 337(a)." *Caplinger*, 921 F. Supp. 2d at 1223; *Ledet*, 2013 WL 6858858, at *4; *see also Houston,* 2013 WL 3927839, *8 (holding that any negligence claims based on alleged illegal off-label promotion were impliedly preempted because such claims 'exist[s] solely by virtue' of federal regulations, and is not rooted in any traditional state tort law.")  Meanwhile, in *Perez*, the Ninth Circuit held the fraud claim based on alleged off-label promotion was also impliedly preempted.  The court determined that an off-label-based "fraud by omission claim 'exist[s] solely by virtue of the FDCA … requirements,' with respect to approved use of the [medical device]." *Perez*, 711 F.3d at 1119 (citation omitted). The Court reasoned that off-label use is a concept entirely derived from the FDCA, and "'the existence of these federal enactments is a critical element in their case.'" *Id*. (citing *Buckman*, 531 U.S. at 353).

In enacting the FDCA, Congress declined to create a private cause of action and required that any action to enforce the FDCA "shall be by and in the name of the United States" (21 U.S.C. § 337(a)), thus mandating that the FDCA and its implementing regulations be "enforced exclusively by the Federal Government." *Buckman*, 531 U.S. at 352.  Section 337(a) therefore impliedly preempts any private action to enforce duties created by the federal regulations. *Caplinger*, 921 F. Supp. 2d at 1214-15; *Riley*, 625 F. Supp. 2d at 776–77.  "States are not granted any authority," including by recognition of "common-law suit[s]…to enforce compliance with the specific federal requirements established by the PMA process." *Kemp v. Medtronic, Inc.*, 231 F.3d 216, 236 (6th Cir. 2000).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

This Court should thus reject Plaintiffs' attempt to enforce purported federal regulations as an impermissible intrusion on the FDA's exclusive and discretionary authority. To be sure, § 337(a) does not itself preclude claims that arise under "'traditional state tort law'"—*i.e.*, where there would be "'liability under state law even if the FDCA had never been enacted.'" *Caplinger*, 921 F. Supp. 2d at 1214 (quoting *Riley*, 625 F. Supp. 2d at 777). But §337(a) forbids private plaintiffs from asserting any "'state claim [that] would not exist if the FDCA did not exist,'" or any claim for which "'the existence of these federal enactments is a critical element,'" because such a claim "'is in substance (even if not in form) a claim for violating the FDCA'" and may be enforced only by the federal government. *Id.* Thus, claims that "'would not exist absent the federal regulatory scheme established by the FDCA'" are impliedly preempted by § 337(a). *Id.*; *accord Loreto v. Procter & Gamble Co.*, 515 Fed. Appx. 576, 579 (6th Cir. 2013) (citing *Riley*, 625 F. Supp. 2d at 777).

Furthermore, there is no traditional state-law duty to abstain from off-label promotion, as the very ***concept*** of off-label promotion did not exist until Congress required manufacturers to obtain FDA approval of device labels. *See Caplinger*, 921 F. Supp. 2d at 1219-20 ("[T]he concept of 'off-label use' is a creature of the FDCA, is defined by the FDCA, and is not a part of [state] law."); *Gavin*, 2013 WL 3791612, at *17 (same); *In re Zyprexa Prods. Liab. Litig.*, 2008 WL 398378, *5 (E.D.N.Y. Feb. 12, 2008) ("[T]here is no state-law equivalent of 'off-label.' The concept is entirely federal."). Thus, by seeking to impose liability for any alleged violation of purported federal regulations relating to off-label promotion, Plaintiffs are either (1) trying to usurp the FDA's regulatory oversight role for policing purported FDA violations; or (2) basing their tort claims solely on a violation of federal law. Either way, Plaintiffs' claims run into *Buckman*'s implied preemption principles.

Similarly, to the extent their claims are based on alleged misrepresentations and omissions regarding defendants' practice of promoting and marketing to physicians the off-label use of the Infuse Device, these too are impliedly preempted under

- 21 -

*Buckman* and § 337(a).  *See Caplinger*, 921 F. Supp. 2d at 1219-20 (fraudulent misrepresentation/fraud in the inducement claim is "in substance a claim for violating the FDCA and, thus, is clearly preempted under *Buckman* and § 337(a).")  Because "even the concept of 'off-label use' is a creature of the FDCA, is defined by the FDCA" and is not itself a part of California law, Plaintiffs' fraud claims are impliedly preempted because they are in essence a claim for violating the FDCA regardless of how Plaintiffs label their claims.  *See Caplinger*, 921 F. Supp. 2d at 1219-20.

Finally, any tort claim based on a failure to submit adverse-event reports to the FDA "would not be relying on traditional state tort law which had predated" the FDCA (*Buckman,* 531 U.S. at 353), because any duty to submit such supplements or reports arises solely from the FDCA and its implementing regulations.  Given that "the existence of these federal enactments is" therefore "a critical element" of any such claim, such claims are impliedly preempted by § 337(a).  *Id.*

In short, Plaintiffs' "claims are simply an attempt by [a] private part[y] to enforce the MDA, claims foreclosed by Section 337(a) as construed in *Buckman*."  *Bryant*, 623 F.3d at 1205–06.  Such claims are impliedly preempted.

## C.    Independent Grounds Also Bar Certain Claims

### 1.    Plaintiffs' Fraud Claims Are Not Pled with Particularity

Plaintiffs' fraud and misrepresentation claims are not pled with particularity as required by Rule 9(b), which requires plausibility and specificity in pleading the circumstances of allegedly fraudulent statements.  *See Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d at 1047, 1055 (9th Cir. 2011) ("claims of fraud or mistake… must, in addition to pleading with particularity, also plead plausible allegations"); *Erickson*, 846 F. Supp. 2d at 1093 (fraud-based claims not plead with particularity because "the Complaint does not allege the specific content of these misrepresentations.  Nor does the Complaint allege when and where the misrepresentations were made, or who made them."); *Caplinger*, 921 F. Supp. 2d at 1220-21 (fraud claims dismissed because they were not pled with particularity);

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Hawkins,* 2014 WL 346622, at *12-13 ("Plaintiff fails to allege not only the content of the off-label promotion directed at his spine surgeon and on which the surgeon relied, but he also fails to allege who made those representations to his surgeon and when the representations were made. Rule 9(b) requires more than the generalize allegations made here"); *Houston*, 2013 WL 3927839, *10 (similar).

Here, Plaintiffs have not pled specifics for any alleged misrepresentations or omissions made by Medtronic. Furthermore, Plaintiffs' background "general allegations" does not supply the specifics of the alleged misrepresentations either because these still are missing allegations of a connection to Medtronic or to the ***Plaintiffs*** or the ***Plaintiffs' physicians*** adequate to support any fraud claim. For example, Plaintiffs have alleged that peer-reviewed, published scientific studies downplay the risks of off-label use.[9] But ***absent*** are specific allegations showing the study authors were agents of Medtronic or authorized to act on its behalf for this purposes, and specific allegations that Plaintiffs or Plaintiffs' surgeons heard any particular misrepresentation and relied on it. Plaintiffs' fraud claims thus ultimately depend on a "fraud-on-the-market" theory—with the "market" being the medical community at large, rather than specific fraudulent statements to Plaintiff's surgeons—and this is a theory rejected in the pharmaceutical and medical device context. *See In re Actimmune Mktg. Litig.*, 2009 WL 3740648, *14 (N.D. Cal. Nov. 6, 2009) (rejecting "plaintiffs['] argu[ment]…that defendants 'saturated' the market for information regarding Actimmune, and thus plaintiffs' doctors necessarily relied upon defendants' misrepresentations when choosing to prescribe Actimmune" as "nothing more than a repackaging of the 'fraud on the market'" previously rejected by the

---

[9] Although Plaintiffs allege that the physicians who authored the peer-reviewed, published studies were Medtronic "consultants," they do not allege that these other physicians were speaking on Medtronic's behalf at the relevant time as agents who were authorized to do so. *See Batzel v. Smith*, 333 F.3d 1018, 1035 (9th Cir. 2003) (company not vicariously liable for torts of individual because plaintiff failed to show that corporation had control over individual).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

court), *aff'd*, 464 Fed. App'x 651 (9th Cir. 2011).

Moreover, through the FDA-required labeling for the Infuse Device, Medtronic *did provide the FDA-required warnings* about potential on-label and off-label risks, and yet their doctors proceeded with the surgeries.  Given what the label said and what their surgeons actually did, the allegation that Plaintiffs' doctors would have done something different had there been additional information in medical articles simply is not plausible as Rule 9(b) requires.  *See Cafasso*, 637 F.3d at 1055.  In short, Plaintiffs' fraud-based claims are not pled with the requisite particularity.

### 2.    Plaintiffs' Breach of Express and Implied Warranty Claims Fail

On the actual Infuse Device label, Medtronic expressly disclaimed all warranties.  It stated:  "No warranties, express of implied, are made.  Implied warranties of merchantability and fitness of particular purpose or use are specifically excluded."  *See RJN*, Exh. G at 3) and Exh. H.  This warranty disclaimer alone bars Plaintiffs' warranty claims.  *Temple v. Velcro USA, Inc.*, 148 Cal. App. 3d 1090, 1094 (1983); *see also Scovil*, 2014 WL 502923, at *11.

But, as in *Houston,* Plaintiffs' theory here is that the physician-written, peer-reviewed, scientific articles warranted that the Infuse Device was safe and effective for off-label procedures. *Compare Houston*, 2013 WL 3927839, *10 *with Doc. 1, ¶¶ 382, 384*.  And, as in *Houston,* such allegations do not support an express warranty claim, because they do "not allege[] sufficient facts for the claim to survive dismissal under Rule 8." *See Houston*, 2013 WL 3927839, at *11. Such allegations lack "*facts demonstrating that Defendants made any affirmations specifically to Plaintiff or her physician so as to form the basis of the bargain*." *Id.* (emphasis added).

As to Plaintiffs' implied warranty of fitness claim, that is not cognizable under California law where a medical device like the Infuse Device is involved.  By statute, no implied warranty of fitness exists for an "assistive device" if that assistive device is a "surgical implant performed by a physician and surgeon."  Cal. Civ. Code § 1793.02(e)(3).  Because the Infuse Device is implanted in patients to assist in spinal

- 24 -

fusion and alleviate degenerative disc disease [*RJN, Exh. A, p. 1, Exh. B, p. 1)*], this claim falls within this statutory bar.  *See Fender v. Medtronic, Inc.*, 887 F. Supp. 1326, 1332–33 (E.D. Cal. 1995) (concluding Cal. Civ. Code §§ 1791, 1792.2 and 1793.02 apply to pacemaker leads and bar warranty of fitness claims).

### 3.    Plaintiffs' Strict Liability Design Defect Claim Is Barred by the Restatement (Second) of Torts, § 402A, Comment k

Plaintiffs' design defect claim also is barred by California law.  California has adopted the Restatement (Second) of Torts § 402A Comment k, which precludes liability for manufacturers of prescription medical devices under a design defect theory, and permits strict liability only on manufacturing defect and failure to warn theories.  *See Brown v. Superior Court*, 44 Cal. 3d 1049, 1061 (1988) (prescription drugs); *Garrett v. Howmedica Osteonics Corp.*, 214 Cal. App. 4th 173, 178 (2013) (implanted device); *Artiglio v. Superior Court*, 22 Cal. App. 4th 1388, 1397 (1994) (same); *Hufft v. Horowitz*, 4 Cal. App. 4th 8, 11, 20 (1992) (same); *Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 360-361 (1992) (same).  The Infuse Device is a Class III, Premarket Approved prescription implanted medical device that can only be sold to physicians or hospitals.  (*Doc. 10, Ex. B, p. 1 (stating "[t]he sale, distribution, and use of this device are restricted to prescription use.")*).  Thus, Plaintiffs' strict liability design defect claim cannot be asserted under California law.  *See Eidson v Medtronic*, ---F. Supp. 2d---, 2013 WL 5533081, *16 (N.D. Cal. Oct. 3, 2013) (finding design defect claim barred under California law); *Hawkins*, 2014 WL 346622, at * 16 (same).

### IV.    CONCLUSION

For these reasons, Plaintiffs' claims should be dismissed with prejudice.

DATED:  February 14, 2014                REED SMITH LLP

By    /s/ Michael K. Brown
Michael K. Brown
*Attorneys for Defendants Medtronic, Inc., Medtronic Sofamor Danek USA, Inc., and Medtronic Vertelink, Inc.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT